## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHADRONICA STREET** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-4260** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL.** | **SECTION: D (1)** |

### <u>ORDER AND REASONS</u>

Before the Court is BP's *Daubert* Motion to Exclude the Causation Testimony of Plaintiff's Expert, Dr. Jerald Cook[1] filed by Defendants BP Exploration & Production Inc., BP America Production Company, and BP p.l.c. as well as Defendants' Motion for Summary Judgment.[2]  Halliburton Energy Services, Inc., Transocean Holdings, LLC, Transocean Deepwater, Inc., and Transocean Offshore Deepwater Drilling, Inc. (collectively "Defendants") have joined in both motions.[3] Plaintiff Shadronica Street ("Plaintiff") opposes both Motions.[4] Defendants have filed a Reply in support of their Motion *in limine* and Plaintiff has filed a Supplemental Memorandum in Opposition to BP's *Daubert* Motion to Exclude the Causation Testimony of Plaintiffs' [sic] Expert, Dr. Jerald Cook.[5]

After careful consideration of the parties' memoranda, the record, and the applicable law, the Defendants' Motions are **GRANTED**.

---

[1] R. Doc. 73.
[2] R. Doc. 74.
[3] *See* R. Doc. 73 n.1; R. Doc. 74 n.1.
[4] R. Doc. 75; R. Doc. 76.
[5] Defendants' Reply, R. Doc. 82.  Plaintiff's Supplemental Memorandum, R. Doc. 96.  Defendants filed a response to Plaintiff's Supplemental Memorandum.  *See* R. Doc. 100.

## I.     FACTUAL & PROCEDURAL BACKGROUND

This case arises from the *Deepwater Horizon* oil spill in the Gulf of Mexico in 2010 and the subsequent cleanup efforts of the Gulf Coast.  On January 11, 2013, United States District Judge Carl J. Barbier, who presided over the multidistrict litigation arising out of the *Deepwater Horizon* incident, approved the *Deepwater Horizon* Medical Benefits Class Action Settlement Agreement (the "MSA").[6] However, certain individuals, referred to as "B3" plaintiffs, either opted out of or were excluded from the MSA.[7]  Plaintiff Shadronica Street opted out of the MSA and, accordingly, is a B3 plaintiff.[8]

Plaintiff filed this individual action against Defendants on April 28, 2017 to recover for injuries allegedly sustained as a result of the oil spill.[9]  For over twelve months in 2010 and 2011, Plaintiff worked as a beach cleanup worker, tasked with cleaning up oil and oil-covered debris from the beaches and coastal areas near Cat Island and Long Beach, Mississippi.[10]  Plaintiff alleges that Defendants' negligence and recklessness in both causing the Gulf oil spill and subsequently failing to properly design and implement a clean-up response caused her to suffer myriad injuries including nasal congestion, decreased sense of smell, throat irritation, vomiting, nausea, abdominal cramps and pain, gastroenteritis, GERD, rashes, skin itching, scaling, bronchitis, URI, shortness of breath, cough, wheezing, headaches, dizziness,

---

[6] *See* Brown v. BP Expl. & Prod. Inc., Civ. A. No. 18-9927, 2019 WL 2995869, at *1 (E.D. La. July 9, 2019) (citation omitted) (Africk, J.).
[7] *See In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, No. MDL 2179, 2021 WL 6053613, at *2 (E.D. La. Apr. 1, 2021).
[8] R. Doc. 1 at ¶ 5.
[9] *Id.*
[10] R. Doc. 1-1 at p. 5.

weight loss, and depression.[11]   Specifically, Plaintiff seeks to recover economic damages, personal injury damages—including damages for past and future medical expenses and for pain and suffering—punitive damages, and attorneys' fees, costs, and expenses.[12]

   To help support her claims that exposure to the chemicals present in the oil spilled by Defendants caused her particular health symptoms, Plaintiff offers the report ("Report") and testimony of Dr. Jerald Cook.[13]   Dr. Cook is a retired Navy physician with expertise specifically as an occupational and environmental physician.[14]   Dr. Cook's Report is tailored directly to Plaintiff's claims and addresses both general causation and specific causation.[15]   The Report specifically analyzes Plaintiff's alleged health complaint of rhinosinusitis "from occupational exposures that occurred during her work in oil spill cleanup."[16]   The Report does not contain an analysis of any of Plaintiff's other alleged injuries.

   Defendants filed the instant Motion *in limine* and Motion for Summary Judgment on March 21, 2022.   In their Motion *in limine*, Defendants contend that Dr. Cook's Report should be excluded from testifying due to, *inter alia*, Dr. Cook's failure to identify scientific literature demonstrating an association between crude oil exposure and Plaintiff's symptoms and his failure to identify the harmful level of exposure capable of causing Plaintiff's particular injuries for each chemical that

---

[11] *See* R. Doc. 74-2 at p.1.
[12] R. Doc. 1 at pp. 5–6.
[13] R. Doc. 73-2.
[14] *Id.* at p. 2.
[15] *Id.* at p. 3.
[16] *Id.*

Plaintiff alleges to have been exposed to.  Defendants also object to Dr. Cook's specific causation opinion, arguing that he fails to provide the level of Plaintiff's exposure to the weather oil.  Because Dr. Cook should be excluded from testifying, Defendants argue, the Court should grant their Motion for Summary Judgment as Plaintiff is unable to establish general causation through expert testimony, a necessary requirement under controlling Circuit precedent.  Plaintiff opposes both Motions, arguing that Dr. Cook's Report satisfies the *Daubert* standards for reliability and relevancy and, therefore, that summary judgment is inappropriate.

Plaintiff filed a supplemental memorandum to her response to Defendants' Motion *in limine* in which Plaintiff provided an affidavit of Dr. Linda Birnbaum ("Dr. Birnbaum"), the Director of the National Institute of Environmental Health and Sciences from 2009 to 2019.[17]  Dr. Birnbaum states that the "proposition that it is possible to establish a BP Oil Spill responder's quantitative exposure to a given chemical at a given level" based on either "the data that was collected during the BP Oil Spill response" or on "studies of other oil spills and non-oil spill related studies of exposure to crude oil . . . is not plausible."[18]  Dr. Birnbaum also opines that the "GuLf Study exposure assessment and epidemiology are the current, best, and state of the art scientific literature on the exposure and health effect outcomes of BP Oil Spill responders."[19]  Plaintiff relies upon Dr. Birnbaum to support her argument that Dr. Cook's failure to meet the requirements for general causation opinions as called for

---

[17] R. Doc. 96; R. Doc. 96-1.
[18] R. Doc. 96-1 at pp. 6–7.
[19] *Id.* at p. 7.

by Defendants as well as every section of this court should be excused because Dr. Cook has nevertheless utilized the best available methodologies to support Plaintiff's causation claim given Defendants' conduct.[20]   Defendants filed a response to this supplemental memorandum, arguing that Dr. Birnbaum's affidavit is irrelevant because the flaws in Dr. Cook's Report do not depend on whether biological monitoring and testing was done on the cleanup workers.[21]

## II.   LEGAL STANDARD

### A.  Motion *in Limine*

The district court has considerable discretion to admit or exclude expert testimony under Fed. R. Evid. 702,[22] and the burden rests with the party seeking to present the testimony to show that the requirements of Rule 702 are met.[23]  Rule 702 provides that an expert witness "qualified . . . by knowledge, skill, experience, training or education may testify in the form of an opinion" when all of the following requirements are met:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and

---

[20] *See* R. Doc. 96 at p. 2 ("In sum, what BP demands of Dr. Cook is something that the best research scientists, with the benefit of massive financial resources and over ten years to conduct their research have not done.").

[21] *See* R. Doc. 100 at pp. 2–3.

[22] *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 138–39 (1997); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000); *Tajonera v. Black Elk Energy Offshore Operations, LLC*, Civ. A. No. 13-0366 c/w 13-5550, 13-5137, 13-2496, 13-5508, 13-6413, 14-374, 14-1714, 2016 WL 3180776, at *8 (E.D. La. June 7, 2016) (Brown, J.) (citing authority).

[23] *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

(d) The expert has reliably applied the principles and methods
    to the facts of the case.[24]

Rule 702 codifies the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which charges district courts to act as "gatekeepers" when determining the admissibility of expert testimony.[25]  "To be admissible under Rule 702, the court must find that the evidence is both relevant and reliable."[26]  According to the Fifth Circuit, reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid, while relevance depends on whether the reasoning or methodology underlying the testimony can be properly applied to the facts at issue.[27]  The purpose of the reliability requirement is to exclude expert testimony based merely on subjective belief or unsupported speculation.[28]

To satisfy the reliability prong of the *Daubert*/Rule 702 analysis, a "party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[29]  To prove reliability, the proponent of the expert testimony must present some objective, independent validation of the expert's methodology.[30]  The

---

[24] Fed. R. Evid. 702; *Tajonera*, 2016 WL 3180776, at *8.

[25] *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

[26] *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012) (citing *United States v. Valencia*, 600 F.3d 389, 423 (5th Cir. 2010)).

[27] *Ebron*, 683 F.3d at 139 (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)).

[28] *Tajonera*, 2016 WL 3180776, at *8 (citing *Daubert*, 509 U.S. at 590).

[29] *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, Civ. A. No. H-19-2953, 2020 WL 5623982, at *2 (S.D. Tex. Sept. 18, 2020) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)) (internal quotation marks omitted).

[30] *Recif Res., LLC*, 2020 WL 5623982, at *2 (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).

objective of this Court's gatekeeper role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[31]

### B. Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[33] While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[34] Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[35]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[36] The

---

[31] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 194 (5th Cir. 2006).

[32] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[33] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[34] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[35] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Anderson*, 477 U.S. at 248).

[36] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[37]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[38]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[39]

## III.   ANALYSIS

The burden of proof is on the B3 plaintiffs to prove that "the legal cause of the claimed injury or illness is exposure to oil or other chemicals used during the response."[40]  To prove causation, the B3 plaintiffs are required to provide reliable expert testimony.[41]  "A plaintiff in such a case cannot expect lay fact-finders to understand medical causation; expert testimony is thus required to establish causation."[42]

---

[37] *Id*. at 1265.
[38] *See Celotex*, 477 U.S. at 322–23.
[39] *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).
[40] *In re Oil Spill*, 2021 WL 6053613, at *11.
[41] *See, e.g.*, *Seaman v. Seacor Marine, LLC*, 326 Fed. Appx. 721, 723 (5th Cir. 2009).
[42] *Id*. (citing *Allen v. Penn. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996)).

Courts use "a two-step process in examining the admissibility of causation evidence in toxic tort cases."[43]  First, a court must determine whether general causation exists.[44]  "General causation is whether a substance is capable of causing a particular injury or condition in the general population."[45]  Second, if the court finds that there is admissible general-causation evidence, "the district court must determine whether there is admissible specific-causation evidence."[46]  "[S]pecific causation is whether a substance caused a particular individual's injury."[47]  If the court finds that there is no admissible general causation evidence, it need not consider the issue of specific causation.[48]

To establish general causation, a causation expert must identify "the harmful level of exposure to a chemical" at which physical symptoms manifest.[49]  As explained by Dr. Cook, nearly every chemical on Earth may be toxic or even fatal at a certain level of exposure.[50]  Thus, causation experts determine not only *whether* a chemical is capable of causing certain health effects, but *at what level* of exposure do those health affects appear.  Experts, such as Dr. Cook, refer to this inquiry with the

---

[43] *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007).
[44] *Id.*
[45] *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997)).
[46] *Id.*
[47] *Id.*
[48] *Id.* ("Evidence concerning specific causation in toxic tort cases is admissible only as a follow-up to admissible general-causation evidence.").
[49] *Allen*, 102 F.3d at 199.
[50] R. Doc. 73-2 at p. 14; *see also English v. BP Expl. & Prod. Inc.*, No. CV 17-4325, R. Doc. 48-6 (Deposition of Dr. Jerald Cook) at 150:14–16 (E.D. La. September 26, 2022) (Vitter, J.) ("Like I said, something not very harmful, such as water, can become harmful at a high enough dose.").

maxim, *dosis sola facit venenum*, or "the dose determines the poison."[51]  This analysis is also referred to in the Bradford Hill factors as the dose-response relationship.[52]

In recognition of the importance of this step of the causation analysis, the American Medical Association's *Guide to the Evaluation of Disease and Injury Causation* states that determining "whether the estimated dose was sufficient to explain observed clinical effects known to be associated with the agent in question" is the "most critical phase of the hazard evaluation process."[53]  Relatedly, the Fifth Circuit states that this detail is one of the "minimal facts necessary to sustain the plaintiff's burden in a toxic tort case."[54]  Plaintiffs must provide reliable expert testimony establishing the requisite level of exposure necessary to cause each alleged physical harm.[55]  Accordingly, failure to properly identify the level of exposure to a particular chemical at which harmful effects occur necessarily renders a general causation opinion to be unreliable and, thus, inadmissible.[56]

---

[51] R. Doc. 73-2 at p. 14.  Such knowledge dates back to at least the time of Paracelsus, the great sixteenth-century Swiss philosopher and scientist, who remarked that "[s]olely the dose determines that a thing is not a poison." *See* Joseph Borzelleca, *Paracelsus: Herald of Modern Toxicology*, 53 Toxicological Scis. 2, 4 (1999).

[52] R. Doc. 73-2 at p. 14.

[53] Dr. Cook testified that he regularly consults the AMA *Guide*.  *See English*, R. Doc. 48-6 (Deposition of Dr. Jerald Cook) at 59:22–60:1.

[54] *Allen*, 102 F.3d at 199; *accord McGill v. BP Expl. & Prod., Inc.*, 830 Fed. Appx. 430, 433 (5th Cir. 2020) (affirming exclusion of expert's opinions where "none [of the studies on which the expert relied] provide conclusive findings on what exposure level of Corexit is hazardous to humans.").

[55] *Allen*, 102 F.3d at 195; *see also McGill*, 830 Fed. Appx. at 433 n.1 (excluding expert testimony where the studies relied upon by expert "did not address what level of exposure would be unsafe for humans or *what specific illnesses* that exposure may cause.") (emphasis added).

[56] *See Dawkins v. BP Expl. & Prod., Inc.*, No. CV 17-3533, 2022 WL 2315846, at *6  (E.D. La. June 28, 2022) (Vance, J.), *reconsideration denied*, No. CV 17-3533, 2022 WL 4355818 (E.D. La. Sept. 20, 2022) ("Accordingly, if the Court finds that plaintiff cannot 'prove, at [a] minimum, that exposure to a certain level of a certain substance for a certain period of time can cause a particular condition in the general population,' then the Court's inquiry into general causation is complete." (quoting *Williams v. BP Expl. & Prod., Inc.*, No. 18-9753, 2019 WL 6615504, at *8 (E.D. La. Dec. 5, 2019) (Morgan, J.)).

This Court has previously considered Dr. Cook's non-plaintiff-specific general causation reports in other B3 cases, finding that for each version of the report, Dr. Cook failed to satisfy the *Daubert* standards for reliability and relevancy.[57] The Court has, therefore, excluded Dr. Cook's report in every B3 case before it. However, the Court has not yet addressed the first version of Dr. Cook's Report, offered here by Plaintiff. As discussed above, this version of Dr. Cook's Report contains both a general causation opinion as well as a specific causation opinion tailored directly to Plaintiff. For the following reasons, the Court finds that the November 17, 2021 Report offered here by Plaintiff fails to meet the *Daubert* standards for expert testimony and must be excluded.

As with his subsequent reports, Dr. Cook fails to adequately establish the level of exposure to a particular substance required to cause the types of injuries specifically complained of by Plaintiff. At no point in his general causation opinion does Dr. Cook establish the dosage level of the types of chemicals and materials that Plaintiff alleges to have been exposed to at which Plaintiff's symptoms manifest. Dr. Cook provides no study or support demonstrating a dose response relationship between the chemicals in weathered crude oil and rhinosinusitis or any other symptom alleged by Plaintiff. Although Dr. Cook generically states that values such as the lowest adverse effect level ("LOAEL"), no observed adverse effect level

---

[57] *See, e.g.*, *English v. BP Expl. & Prod., Inc.*, No. CV 17-4325, 2022 WL 5158669 (E.D. La. Sept. 26, 2022), *reconsideration denied*, No. CV 17-4325, 2022 WL 17532293 (E.D. La. Dec. 8, 2022) (Version 2); *Beacham v. BP Expl. & Prod., Inc.*, No. CV 17-3038, 2023 WL 315912 (E.D. La. Jan. 19, 2023) (Version 3); *Kaoui v. BP Expl. & Prod., Inc.*, No. CV 17-3313, 2023 WL 330510 (E.D. La. Jan. 12, 2023) (Version 4).

("NOAEL"), and minimal risk level ("MRL") are all relevant in determining a dose response relationship, Dr. Cook does not provide any information in his Report on any of those values for the chemicals Plaintiff was exposed to.[58]

Plaintiff's reliance on Dr. Birnbaum's affidavit is misplaced. BP's alleged failure to conduct dermal and biological monitoring of the oil spill cleanup workers has *no bearing* on Dr. Cook's Report and the requirement that Dr. Cook adequately demonstrate the level of exposure to the chemicals in the oil encountered by Plaintiff required to cause the injuries complained of by Plaintiff. Accordingly, Plaintiff's argument in this regard is irrelevant to the deficiencies in Dr. Cook's report.

Moreover, as one judge has put it, "[Dr.] Birnbaum's affidavit neither cures nor explains the deficiencies of [Dr.] Cook's report."[59] While the Court takes no issue with Dr. Birnbaum's statement that it is "not plausible" to establish any particular oil responder's exposure level with data collected either from the Gulf oil spill or from any other spill, Dr. Birnbaum's remark is beside the point and appears to conflate general causation with specific causation. General causation does not require quantitative exposure data of the Plaintiff; rather, it requires evidence demonstrating that the types of chemicals encountered by Plaintiff are actually capable of causing the injuries alleged by Plaintiff.[60] The supposed implausibility of "establish[ing] a BP Oil Spill responder's quantitative exposure to a given chemical at a given level"[61]

---

[58] *See* R. Doc. 73-2 at p. 14.
[59] *Walker v. BP Expl. & Prod. Inc.*, No. CV 17-3012, 2022 WL 17987118, at *8 (E.D. La. Dec. 29, 2022) (Africk, J.).
[60] *Knight*, 482 F.3d at 351 ("General causation is whether a substance is capable of causing a particular injury or condition in the general population." (quoting *Havner*, 953 S.W.2d at 714)).
[61] R. Doc. 96-1 at pp. 6–7.

simply has no bearing on the threshold general causation inquiry.  Accordingly, the Court does not find that Dr. Birnbaum's affidavit corrects or explains the shortcomings of Dr. Cook's Report so as to render his opinions admissible.

Further, the Court notes that this version of Dr. Cook's Report is even more bare-boned than the versions previously considered by the Court.  From what the Court can tell, there is little-to-no relevant information in the general causation section of this Report that is not also contained in the previously excluded reports.[62] For the same reasons set forth in greater detail in prior Orders considering Dr. Cook's reports, the Court determines that Plaintiff has failed in her burden of establishing the reliability and relevance of her expert's report and finds it appropriate to grant Defendants' Motion *in limine* to exclude Dr. Cook's Report.[63]   Plaintiff accordingly lacks expert testimony on general causation.  Without expert testimony, which is required to prove general causation,[64] Plaintiff has failed to demonstrate a genuine dispute of material fact regarding her claims that her injuries were caused by exposure to oil.  "When a plaintiff has no expert testimony to prove his medical diagnosis or causation at trial, the plaintiff's suit may be dismissed at the summary judgment stage."[65]   Thus, Defendants' Motion for Summary Judgment must be granted as Defendants are entitled to judgment as a matter of law due to Plaintiff's failure to establish general causation.

---

[62] The general causation section of this Report is a little over nine pages in length.  By contrast, the June 21, 2022 Version of Dr. Cook's General Causation Report is 254 pages long.

[63] *See, e.g.*, *Kaoui*, No. CV 17-3313, 2023 WL 330510.

[64] *See, e.g.*, *Perkins v. BP Expl. & Prod.*, No. 17-4476, 2022 WL 972276, at *2 (E.D. La. Mar. 31, 2022) (Milazzo, J.) ("In a toxic tort suit such as this one, the plaintiff must present admissible expert testimony to establish general causation as well as specific causation.").

[65] *Williams*, 2019 WL 6615504, at *11.

IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' *Daubert* Motion to Exclude the

Causation Testimony of Plaintiff's Expert, Dr. Jerald Cook[66] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary

Judgment[67] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are

**DISMISSED with prejudice**.

New Orleans, Louisiana, March 3, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[66] R. Doc. 73.
[67] R. Doc. 74.